## SUPREME COURT.

In the Matter of the Petition of JOHN W. LEWIS agt. THE MAYOR, &c., of the City of New York.

The provisions of the act of 1858, in reference to vacating assessments, &c., are only intended to relieve against fraud or legal irregularity in the proceedings relative to an assessment or the proceedings to collect the same.

The act does not authorize any inquiry, whether the work has been well done; or whether the contract has been fully performed; or whether the materials used are according to the specifications; or whether the common council had all the surveys and certificates of inspectors as required by the ordinances, except where *fraud* is alleged to have been committed.

By the act of 1813, the common council of New York are authorized to *repair or repave* a street, and to·charge the expense *upon the property*.

The *unanimous consent* required to the passage of an ordinance by both boards of the common council *on the same day*, is the consent of all the members present at the time of its passage. And this may appear from the fact that no objection was made at the time. and that all the members present voted for the ordinance.

It is not necessary to publish for two days an *amendment* to an original ordinance providing for the expense of repairing a street. A publication under the original ordinance gives notice to the owner of the contemplated improvement, and this satisfies the requirements of the statute.

An objection that no *appropriation* was made by law before the contract was made (*Laws* 1857, *ch.* 446) is answered by the fact that this provision does not apply to cases where the expense is charged upon the *owners* and not on the public treasury.

Objections to the mode of doing the work and the want of proof annexed to the assessment roll are not grounds for vacating such an assessment.

It is not a valid objection to such an assessment made by the board of assessors, that the *assessors had been change*d between the passage of the ordinance and the signing of the assessment roll. The statute directs the duty of assessing to be done by the *board of assessors* for the time being. It is unnecessary to name the assessors individually in the ordinance.

The assessors cannot include any charge for making the assessment. The allowance of 2 per cent for making such assessment is no longer a legal charge.

*New York General Term, January*, 1868.

*Before* BARNARD *P. J.*, INGRAHAM *and* SUTHERLAND, *Justices.*

AN application was made to judge CLERKE to vacate the assessment in this case under the act of 1858. Testimony was taken before that justice and afterwards on a hearing before another justice the application was denied. The petitioner appeals from that order.

JOHN ELY, *for petitioner, appellant.*

RICHARD O'GORMAN, *counsel to the corporation. for respondents.*

I. The first objection taken was that the common council have no lawful authority to cause the expense of this repavement to be assessed upon the owners of the property benefited; because, by an ordinance enacted in 1824 by the common council, it was provided substantially, that when a street has once been paved to the satisfaction of the officers of the corporation, at the expense of the owners of the adjacent property, it shall forever thereafter be paved, repaired and repaved at the expense of the corporation. (*See p.* 237 *Revised Ord. edition of* 1859.) And that by act of legislature (*chap.* 160 *Laws* 1837) it is enacted that all ordinances of the common council shall continue in force until repealed.

The answer to this objection is twofold.

164 NEW YORK PRACTICE REPORTS.

Matter of Lewis agt. Mayor, &c., New York.

1st. The act of 1813, section 175, empowers the corporation to make the improvement in question. The same statute authorizes the common council to lay an assessment for expenses incurred upon the property benefited.

It thus became the duty of the common council to raise the money to pay the expenses incurred, *in the manner* authorized by the act; nor could they by ordinance abrogate the duty which the statute imposed, to assess the expenses upon the property benefited.

Therefore the ordinance of 1824, which attempted to release that source of payment which alone is authorized by the law, was invalid, void *ab initio;* and having no legal existence, could not receive vitality and be kept in existence by the statute of 1837. (*Rhinelander* agt. *The Mayor,* 24 *How.* 304.)

2d. Conceding that the ordinance had legal existence, the effect of the statute of 1837 is only to give it the force of law until repealed.

It is still subject to be repealed by the common council, and they have repealed it as to this improvement by enacting the subsequent and inconsistent ordinance, which commands the expense thereof to be assessed upon the owners of property benefited.

II. Another objection raised, viz, that the contract for the work done was void and consequently no expense was legally incurred therunder, because no appropriation was previously made covering the expense thereof, as required by section 28 of the charter, is sufficiently answered by quoting the language of SUTHERLAND, J. in an opinion delivered in February, 1867, *In the matter of James M. Brown.*

"That provision (of the charter) relates to expenditures of money out of the city treasury, and not to expenditures which are to be charged to and assessed upon the property of individuals.

"In such cases no expenditures were made out of the treasury, and no appropriations are necessary, because the cost of such improvements is paid by the owners of property adjoining, and not by the public authorities."

A moment's consideration shows the absolute impracticability of applying that provision to contracts which must be paid from assessments.

When the contract is made there is nothing to appropriate, for the assessment is not laid until the work is done; even the amount of the contract is unascertained until the work is done and the quantities ascertained by the surveyor's measurement.

III. Another objection raised is that the sum of $793.80 (being 2 per cent) is charged for the expense of making the entire assessment of $40,000 for the whole improvement, of which a portion is charged to petitioner.

(a.) The decision in *Beekman's case* (19 *Abbott*, 245) was not that it was improper to charge the expenses of assessing, but that the charges for assessing (about $3500) in that case were proven to be excessive and beyond the expense actually incurred therefor. (See *Anderson's Points,* 19 *Abbott,* 247.)

In this case no such proof is offered and the court must presume the charges made to be correct in *amount.*

The case of *Wendell* agt. *Brooklyn* (29 *Barb.* 204) cited by appellant is not analagous. There the health officer of a city demanded extra compensation; here the assessors ask nothing—the corporation seeks to be reimbursed the amount expended in sustaining officials, whose exclusive duty consists in apportioning these assessments.

(b.) There is no proof in the record presented to the court that any expense was incurred under this amendment of the ordinance.

(c.) The case shows that the assessment upon petitioner amounted to $1324; the amount assessed upon him, to which the attention of the court is confined in this

NEW YORK PRACTICE REPORTS. 165

Matter of Lewis agt. Mayor, &c., New York.

proceeding, is therefore only $26.48, an amount so insignificant that the court should discard the objection rather than inflict a great and almost remediless disaster upon the corporation by a decision which will vacate every assessment levied in this city since 1859. "*De minimis non curat lex.*"

IV. The next objection taken is that the ordinance of July 14, 1864, amending the ordinance of April 13, 1864 (which last named ordinance originated the improvement) was adopted by both boards of the common council on the same day in contravention of sections 7 and 37 of the charter.

(*a.*) In reply to the objection, so far as it is founded upon section 7 of the charter, it is sufficient to say, that the publication for two days therein required, applies only to resolutions, &c., which "recommend," *i. e.* originate an improvement involving the appropriation of public money, &c. That the amendatory resolution of July 14, 1864, did not originate the improvement; the improvement had been already initiated, and the necessity for assessing the citizens created by the resolution of May 13, 1864, and the amendatory resolution was merely regulating the method and manner of completing the work.

So far as any objection to the resolution is founded upon section 37 of the charter, such objection is completely refuted by the evidence in the case, which shows that the ordinance was adopted by unanimous consent, no one objecting, as appears on the record; all who were present and voted, voted in favor of the ordinance. It does not appear that any were present at the time of the vote who did not vote for it.

V. Another objection made is that the inspector's certificate and surveyor's affidavit, required by an ordinance of the common council, was not attached to the assessment roll.

To this objection I answer:

1st. Compliance with the ordinance is not essential to the validity of the assessment.

The statute has given the corporation power to do the work and lay the assessment; it can lay the assessment, make up the assessment, roll in such form and shape as is most convenient; the ordinance enacted by the corporation, requiring these certificates to be attached to the assessment list, is merely to serve its convenience, and is no part or condition of the exercise of the powers conferred by the statute.

It is merely directory and non-essential. (*Vide Rack's case*, 12 *Abbott*, 119.)

2d. The testimony shows that the ordinance has been substantially complied with.

The inspector's certificates are introduced in evidence, duly made, at the proper time, and filed with the contract clerk, instead of being tied to the assessment roll.

The surveyor also testified that the amount of the work is correctly stated in the certificate attached to the list.

In what manner are the assessed persons aggrieved or injured by the filing of these papers with the clerk, instead of fastening them to the list?

3d. This objection is too late.

It is admitted by stipulation in the testimony that it was not taken before the assessors; if it had been, they could easily and at once have supplied the defect.

Such irregularity, if it is one, does not affect the jurisdiction, and is cured unless the objection is raised before judgment. (*Embury agt. Connor*, 3 *Comstock*, 511; *Miller's case*, 12 *Abbott*, 12L)

VI. The objections raised by appellant's points VIII, IX, X, XI, are the most trivial, in fact and in law, that the anxiety of property owners to cast upon the public the burden of improving their property has yet pressed upon the attention of the court.

Matter of Lewis agt. Mayor, &c., New York.

1st. The testimony shows as matter of fact that the friend and son of the applicant have discovered forty or fifty cobble stones that are from one to three inches larger than the specifications require.

In that tremendous fact consists the violation of the contract.

2d. Whatever the fact be, the objection is not available to the petitioner here.

To entitle the petitioner to relief under the act of 1858, fraud or irregularity "in the proceedings relative to the assessment" must be proven; but frauds in awarding the contract, or ascertaining or allowing the quality of work done under it, cannot be said to be relative to the assessment. (*Hays' case*, 14 *Abbott*, 53; *Matter of 80th street*, 31 *How.* 99.)

VII. The appellant's last point is, "That the individual assessors are not named in the ordinance commanding the assessments."

We reply:

1st. The record presented to the court contained no evidence that any person is named, or by any ordinance empowered, to lay the assessment.

The improvement having been directed by the corporation ordinance of April 13, 1865, the statute (*chap.* 302 *Laws* 1859) charges upon the board of assessors the duty of making the assessment required by law (*see Valentine's Laws*, p. 1280), and the court, in absence of evidence to the contrary, must presume that the assessment has been laid by the board of assessors.

VIII. The order of the justice at special term should be affirmed.

*By the court*, INGRAHAM, J. The provisions of the act of 1858, in most of the applications under it for relief, are not properly understood. They are only intended to relieve against fraud or legal irregularity in the proceedings relative to an assessment or the proceedings to collect the same. Keeping in view the object of the statute, it is apparent that it does not authorize any inquiry whether the work has been well done, or whether the contract has been fully performed, or whether the materials used are according to the specifications, or whether the common council had all the surveys and certificates of inspectors, as required by the ordinances.

These matters belong to the common council as the law was formerly and now is, the board of revision, and do not come within the provisions of this statute, except in cases where fraud is alleged to have been committed. This application is not founded on any allegations of fraud, but the petitioner seeks relief for the supposed legal irregularities in the proceedings.

The first objection is, that the common council have no authority to assess for repairing a street. The power to

NEW YORK PRACTICE REPORTS. 167

Matter of Lewis agt. Mayor, &c., New York.

assess the expense for paving a street is admitted to exist under section 175 and 176 of act of 1813, p. 407. The subsequent authority to the common council to repair the streets and employ persons therefor in sections 193, 194 and 195, does not prevent the charging the expense thereof to the owner. Even if it did, it would not apply to this case of an entirely new pavement, after raising and altering the grade. Either repairing or repaving may be, under these sections, made a charge upon the property.

It is, however, urged that the ordinance of the corporation passed in 1824, by which it was agreed that the streets should be kept in repair at the public expense after they are once paved at the expense of the owner, prevents any such assessment.

In *Rhinelander* agt. *The Mayor, &c.* (24 *How. R. p.* 304), this question was raised, and the justice expressed the opinion that the common council could not bind themselves not to assess for such repaving. That case has been, to some extent, reviewed, so far as it held that the common council could not impose part of the expense of paving a street on the public; and I cannot assent to the doctrine that the common council may not provide by ordinance for repairing and repaving streets at the public expense. I do not, however, consider it necessary to pass on that question here, because this does not come within the provisions of the act of 1858. It is not an irregularity in the proceedings in making the assessment, nor in collecting it. If the common council have made a contract with the owner which they now seek to violate, the remedy is not under this act.

That ordinance also applies only to streets paved after its passage, and there is no evidence to show when West street was originally paved. The objection to the ordinance of July, 15, 1864, is not valid; it was passed by both boards on the same day. That could not be done, unless by unanimous consent. The unanimous consent required, is the consent of all the members present at the time of its passage.

This appears from the fact that no objection was made at the time, and that all the members present voted for the ordinance. Nor was it necessary to publish it for two days previous. That was necessary when the first ordinance was passed, but was not necessary for its amendment. The expense originated under the first ordinance, and a publication then gave notice to the owners of the contemplated improvement, it thus sattisfied that requirement of the statute.

Another objection is, that no appropriation was made by law before the contract was made (*Laws of* 1857, *ch.* 446.) It is a sufficient answer to say that this provision does not apply to cases where the expense is charged upon the owners, and not on the public treasury. The authority to advance to the contractor is under another statute, and the amount so advanced is refunded to the city when collected from the owners.

The other objections to the mode of doing the work and the want of proof annexed to the assessment roll, are not grounds for vacating this assessment. The stipulation shows the inspector's certificates were in the croton aqueduct department.

The remaining objection is, that assessors named in the ordinance did not make the assessment. The assessors had been changed between the passage of the ordinance and the signing of the assessment roll. The statute session 1859, chapter 302, directs the duty of assessing to be done by the board of assessors for the time being. The ordinance should have directed the assessment to be made by the board, and it was unnecessary to name them individually.

The assessment appears to have been made by the board, and there is in this respect no irregularity of which the petitioner can complain.

The assessors should not have included any charge for making the assessment. The allowance of two per cent for making the assessment is no longer a legal charge.

I have heretofore expressed this opinion that, as the amount

was very small, I did not consider it advisable to vacate an assessment in all other respects valid.

The board should not include such a charge; and if persisted in, the court will feel bound to grant relief from it in cases which shall hereafter be brought before it.

The order appealed from is affirmed.